UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HEATHER HERNDON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-06-286 |
| | § | |
| COLLEGE OF THE MAINLAND, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

In this action, Plaintiff asserts that College of the Mainland ("COM") and several of its employees and/or representatives (the "Individual Defendants") have violated her rights under the Thirteenth and Fourteenth Amendments, and under 20 U.S.C. § 1681 *et seq*. ("Title IX"). She also claims that she was retaliated against and that COM is liable for negligent supervision. Currently before the Court are two Motions for Summary Judgment.  One was filed by Defendant Larry Pander, and the other was filed by COM, Steve Keller, Rebecca Miles, and Samuel Scott.[1]  For the reasons articulated below, both Motions are **GRANTED**.[2]

**I.  Background**

Plaintiff began her tenure as a student in COM's Fire Academy ("the Academy") during the 2004-2005 school year.[3]  In October, 2004, shortly after the start of the school year, Plaintiff was involved in an altercation with another student.  The incident involved a male student repeatedly putting a bookbag on a desk and Plaintiff repeatedly pushing the bag on the floor.

---

[1] The Motion was also filed by Defendants Homer Hayes and Pamela Davenport.  However, since the time the Motion was filed, Defendants Hayes and Davenport have been dismissed from this action.

[2] The Court does not consider this Order worthy of publication.  Therefore, it has not requested and does not authorize publication.

[3] Plaintiff's Response to Defendants' Motions is filled with volatile hyperbole meant to ignite the passions of the reader.  Such language is not evidence and is therefore not persuasive or even helpful in the Court's analysis. However, the Court is required to consider the facts in the light most favorable to Plaintiff and therefore has presented the facts alleged by Plaintiff that are consistent with the evidence submitted to the Court.

The confrontation eventually escalated to screaming and name-calling, and the students were separated.  Defendant Steve Keller, Director of the Fire Academy, disciplined both students equally.  The discipline included a written Discipline Violation which informed Plaintiff that additional misbehavior would result in a recommendation of dismissal.

During conversations about the October incident, Plaintiff mentioned that she felt she was being sexually harassed because the male student involved in the altercation had repeatedly asked her out, even after she said no.  Keller provided Plaintiff with the relevant pages of the COM Student Handbook regarding sexual harassment.

Later, Keller developed concerns regarding Plaintiff's ability to meet the strenuous physical and academic requirements of the Fire Academy program.  He had been informed by one of the instructors that Plaintiff had been unable to move a large ladder the required distance, and Plaintiff received poor grades on the first three examinations at the Fire Academy.   She was also repeatedly absent and tardy.  On November 22, 2004, Keller issued Plaintiff a Dismissal Contract, which she signed.  The Contract noted problems with Plaintiff's academics, attendance, behavior, and skills.  The Contract stated that it was Plaintiff's final warning and that any future failure to meet required standards would result in her dismissal from the Fire Academy.

On December 3, 2004, Plaintiff was late to class.  Around that time, Plaintiff claims that one of her instructors, Larry Pander, told her "The only reason we keep you around is that you are black and a woman and we have a quota to meet."  On January 22, 2005, Plaintiff was unable to perform the required physical skills.  On January 29, 2005, Plaintiff refused to participate in a group running exercise, and she left class prior to dismissal.  On January 31, 2005, Plaintiff failed to bring the proper gear to class.  On February 14, 2005, Pander reported that Plaintiff had called him a "smart ass."

Keller met with Plaintiff to talk to her about calling Pander a smart ass.  During that meeting, Plaintiff complained for the first time that she felt there was a hostile environment in the class based on inappropriate comments made by Pander and other students.  Plaintiff claims that fellow students made comments regarding her anatomy, commonly used the word "pussy" around her, and made sexual remarks such as "I sure would like a piece of that."  Keller told Plaintiff that he would not tolerate such behavior from students or instructors and agreed to look into the matter.

On February 16, 2005, Keller warned Pander not to make any further offensive comments.  Pander agreed to watch his language and that of the students in his class.  Keller also spoke with the class president, who stated that some students did make inappropriate comments. In response, Keller gave all of the students a one-hour presentation stressing that inappropriate behavior would not be tolerated in the Academy.

On February 18, 2005, a student tied a noose while the class was practicing knots.  The instructor, Sam Scott, was out of the room when the incident occurred, and no one mentioned it when he returned to the classroom.  Later than night, Plaintiff called Pander at home to tell him that she felt threatened by the noose incident.  Pander called Keller at home on Saturday morning.  Pander and Keller agreed to have the students write statements about the incident. Keller then asked his supervisor to have the College take over the investigation.

On February 21, 2005, Plaintiff met with Lonica Poindexter, the COM Director of Diversity and Equity.  Poindexter investigates employees' claims of harassment , but she does not handle complaints lodged by students.  It was decided that Becky Miles, the COM Judicial Coordinator, was the appropriate person to handle Plaintiff's complaints.  Miles met with Plaintiff the same day.   Plaintiff stated that she wanted Pander to agree to stop using

inappropriate comments, and she wanted something written in Pander's employment file regarding his inappropriate comments.  Pander again agreed to watch his language, and Miles stated that she would place something in his file.

During discussions with Pander and Keller, Miles determined that Plaintiff's academic difficulties, physical limitations, and constant disregard for the absence and timeliness requirements were grounds for dismissal from the Academy.  In order to keep her in the program, Miles helped draft a Probation Contract.  She met with Plaintiff on February 23, 2005 to discuss the Contract, which laid out what Plaintiff needed to do if she desired to successfully finish the program.  Plaintiff signed the Contract.  After the meeting, Miles encountered Plaintiff in the ladies' room, and Plaintiff informed Miles that she intended to resign from the program— which she later did.

Miles continued to investigate Plaintiff's claims after Plaintiff resigned from the program. She reviewed the written statements regarding the nooses incident and personally interviewed the students.  Miles's notes from those interviews indicate that Plaintiff's classmates all denied that Plaintiff had been the subject of harassing sexual or racial comments by Pander.  Many students also mentioned that Plaintiff had been a trouble-maker since the beginning of the program.  The interviews also established that the noose tied in class had been tied by an African-American student while all of the students were goofing off during class.   After conducting these interviews, Miles determined that there was no merit to Plaintiff's claims of harassment and accordingly concluded her investigation.

## II.  Legal Standard

### A.  Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *see also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986).

Generally, the party moving for summary judgment bears the initial burden of "informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323,

106 S. Ct. at 2553.  Then, the non-moving party must come forward with "specific facts showing

there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Similarly, "when a defendant invokes qualified immunity, the burden shifts to the plaintiff to

rebut the applicability of the defense."  *Breen v. Tex. A&M Univ.*, ---F.3d---, 2007 WL 1196513

(5th Cir. Apr. 24, 2007).  The court must view all evidence in the light most favorable to the non-

movant.  *See, e.g., Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003).  If the

evidence would permit a reasonable fact finder to find in favor of the non-moving party,

summary judgment should not be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

### A.  Individual Capacity Claims

Government officials sued in their individual capacities, including all of the individual

Defendants who are employed by the State of Texas, are entitled to immunity from civil damages

unless their conduct violates a clearly established statutory or constitutional right of which a

reasonable person would have known.  *See Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct.

3034, 3038, 97 L. Ed. 2d 523 (1987).  The threshold issue in a qualified immunity analysis is

whether an official's conduct violated a constitutional right, based upon the facts alleged and

taken in the light most favorable to the party asserting the injury.  *See Saucier v. Katz*, 533 U.S.

194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  If no constitutional right was violated, the Court need inquire no further.  *See id.*  If, however, a constitutional violation occurred, the second inquiry is whether the official could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right. *See id.* at 206.

In conducting a qualified immunity inquiry, it is necessary to apply the legal standard to the behavior or each defendant individually since supervisory officials may not be found vicariously liable for the actions of their subordinates under § 1983.  *See Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).  The Fifth Circuit has noted that "supervisory officials may only be held liable only if: (1) they affirmatively participate in acts that cause a constitutional deprivation; or (2) they implement unconstitutional policies that causally result in Plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F. 2d 924, 929 (5th Cir. 1992).

### C.  Official Capacity Claims

 Plaintiff has filed claims against the Individual Defendants in their individual and official capacities.  Claims against government officials in their official capacities are rightly treated as claims against the governmental entity employing them when that entity is also sued. *See Turner v. Houma Mun. Fire and Police Civil Serv.*, 229 F.3d 478, 482 (5th Cir. 2000).  Since COM is also a defendant in this action, there is no need to additionally assert claims against the individual Defendants in their official capacities.  Those claims are redundant, and Plaintiff will not be prejudiced by their dismissal.  Accordingly, all claims against the Individual Defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE**.

## III.  Analysis

### A.  Thirteenth Amendment Claims

The Thirteenth Amendment to the United States Constitution provides:

> Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

U.S. Const., amend. XIII, § 1.  Parties can bring civil actions for violations of the Thirteenth Amendment pursuant to 42 U.S.C. § 1983, which Plaintiff does here.  *See Patton v. Jefferson Correctional Ctr.*, 136 F.3d 458 (5th Cir. 1998).   "The Supreme Court has explained the coverage of 'involuntary servitude' as follows:   'The primary purpose of the [Thirteenth] Amendment was to abolish the institution of slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *Steirer by Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 998 (2nd Cir. 1993) (quoting *United States v. Kozminski*, 487 U.S. 931, 942, 108 S. Ct. 2751, 2759, 101 L. Ed. 2d 788 (1987)). The Supreme Court in *Kozmisnki* noted that "in every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction." *Kozminski*, 487 U.S. at 942, 108 S. Ct. at 2760.  Plaintiff has not alleged any facts that rise to this level.  In fact, even when considered in the light most favorable to Plaintiff, the Record contains no alleged conduct that violates the Thirteenth Amendment, and the Court cannot even speculate as to what work Plaintiff might have been allegedly forced to do as a student at COM.  Since there has been no Thirteenth Amendment violation, the Court need inquire no further as to the Thirteenth Amendment claims against the Individual Defendants in their individual capacities.

COM has also moved for dismissal of the Thirteenth Amendment claim against it.  As

noted above, Plaintiff has not presented a single fact that would entitle her to a recovery under this theory. The Court finds that there is no genuine issue of material fact with regards to an alleged violation of the Thirteenth Amendment. Accordingly, Plaintiff's Thirteenth Amendment claims against all Defendants are **DISMISSED WITH PREJUDICE**.

### B. Fourteenth Amendment Claims

Plaintiff's Complaint alleges violations of the Equal Protection and Due Process clauses of the Fourteenth Amendment, which are brought pursuant to 42 U.S.C. § 1983.[4] Plaintiff's Equal Protection claims are based on her allegations that COM terminated her from the program on the basis of her race and gender. "In order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

### 1. Substantive Due Process

In a § 1983 claim alleging a substantive due process violation, a plaintiff must "(1) assert a protected 'liberty or property' interest and (2) show that they were deprived of that interest under color of state law." *Doe v. Raines County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995). In conducting a due process analysis, it is incumbent upon the Court to "focus on the allegations in the complaint to determine how [plaintiff] describes the constitutional right at stake." *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992). Plaintiff's confusing and convoluted Complaint makes this difficult. A fair reading of the submissions leaves the Court to surmise that Plaintiff is claiming (1) an interest in

---

[4] Plaintiff's Complaint alleges Fourteenth Amendment claims based solely on the Equal Protection Clause. However, the Complaint alleges facts that sound much more like a Due Process claim. Additionally, Plaintiff's Response to Defendants' Motion for Summary Judgment cites the Due Process Clause. Though a Response to a Motion is not the place to assert new causes of action, the Court will treat Plaintiff's Fourteenth Amendment claims as if they are brought under both the Equal Protection Clause and the Due Process Clause.

being free from harassing behavior by her classmates and instructors, and (2) an interest in continuing as a student at the COM Fire Academy.  The Court finds that the first is not a protected liberty interest, and it finds that even if the second can appropriately be considered a property interest, it has not been unconstitutionally infringed upon.

In an effort to be as fair as possible to Plaintiff, who the Court certainly sympathizes with, the Court notes that the facts Plaintiff alleges could potentially trigger a claim based on her right to bodily integrity, which is a right protected by the due process clause.  *See Planned Parenthood v. Casey,* 505 U.S. 833, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992).  Plaintiff does not make this claim, but the Court, nonetheless, will address it as if she had.[5]

The right to bodily integrity has been specifically applied to cases in which students have been subjected to physical sexual abuse.  *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994).[6]  In the context of Title IX, this right has been expanded to include a right to be free from physical sexual harassment by other students.  *See Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999).  However, the harassing behavior alleged by Plaintiff is limited to inappropriate and offensive verbal comments.  At no time does Plaintiff allege any unwelcome physical contact by a student or teacher.[7]  If this were a Title VII claim, the harassment alleged by Plaintiff would not be

---

[5] The Court again notes that it had difficulty deciphering exactly what Plaintiff claims were, so it is making every effort to consider any potential claims that may exist.

[6] The Court notes that the *Doe* decision was limited to children and is not necessarily equally applicable to adults.  Since adults are not placed in the care of educational institutions, they are entitled to less protection. *See Schall v. Martin*, 467 U.S. 253, 265 104 S. Ct. 2403, 2410, 81 L. Ed. 2d 207 (1984) ("Children . . . are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as *paren patriae*."); *May v. Anderson*, 345 U.S. 528, 536, 73 S. Ct. 840, 844, 97 L. Ed. 1221 (1953) (Frankfurter, J., concurring) (discussing the "State's duty towards children" and stating that "[c]hildren have a very special place in life which law should reflect").  Though technically inapplicable to this case, the Court cites *Doe* for illustrative purposes and to give Plaintiff every benefit of the doubt.

[7] No matter how many inflammatory adjectives Plaintiff tacks on to her accusations, the alleged behavior by classmates and instructors is not so offensive as to be violative of the Constitution.  When stripped of the hyperbole which permeates Plaintiff's briefing, she essentially alleges that classmates asked her for dates she was not interested in, used foul language in her presence, and made insensitive and  inappropriate jokes in her presence.

sufficient to sustain a hostile work environment claim.  *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) and finding that "Title VII is not a general civility code for the American workplace" and does not prohibit "incidental, occasional or merely playful sexual utterances").  The Title VII standard is less stringent than the standard for a Due Process violation. *See Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253, 1256 (10th Cir. 1996).  Therefore, Plaintiff's claims of harassment by teachers and students, while indicative of inappropriate and offensive behavior, are insufficient to show that she was deprived of an interest protected by the Constitution.[8]

Plaintiff is also presumably arguing that her substantive due process rights were violated by her constructive termination from the fire academy program.[9]  Without actually deciding whether students have a property interest in a post-high school educational program, the Supreme Court has imposed a very strict standard in evaluating such claims.  *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985).  Specifically:

> when judges are asked to review the substance of a genuinely academic decision…they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee

---

[8] Having found that the harassing behavior was not so severe as to constitute a constitutional deprivation, it is unnecessary for the Court to determine whether the supervisory officials were deliberately indifferent to the rights of Plaintiff.  There simply was no Due Process violation.  *See Doe v. Taylor*, 15 F.3d at 452.

[9] The Record shows that Plaintiff resigned from the Fire Academy rather than being terminated from the program.  In an effort to give Plaintiff the full protection of the summary judgment standard, the Court will assume, without deciding, that Plaintiff was "constructively terminated" from the program and that such constructive termination is fairly treated as actual termination.  This is not to be confused with or compared to claims of "constructive discharge" made in an employment context.  Plaintiff does not allege that she resigned from the program because the environment was too hostile for her to remain.  Rather, her resignation was a direct result of the Probation Contract.  The Court notes that it did not find Plaintiff's arguments regarding constructive termination particularly persuasive.  Furthermore, the Court is making this assumptions for the purposes of *this case only* and is by no means suggesting that future similarly situated parties can effectively pose such a claim.

The Court notes that Plaintiff's Response alleges that "she was constructively dismissed from the program without being accorded due process of law as provided by the Academy guidelines."  Pl.'s Resp. at 9.  To the extent this is meant to raise a procedural due process claim, it is also untenable.  Plaintiff cannot argue that COM did not follow proper procedures when she voluntarily resigned before being given the full benefit of COM's policies.

responsible did not actually exercise professional judgment.

*Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir. 1999) (citing *Regents of Univ. of Mich.*, 474 U.S. at 225, 106 S. Ct. at 513).   Here, Plaintiff complains that faculty members filed written memos regarding poor performance on academic tests, absenteeism, tardiness, and classroom disruptions.   Even Plaintiff acknowledges that the content of the memos was accurate.   Placing written records in Plaintiff's file regarding her performance in the program is well within the realm of accepted academic norms.   Terminating her on the basis of records contained in her written file is also within these norms.   Accordingly, there is simply no basis for this Court to determine that Plaintiff was deprived of a constitutionally protected property right.

Since the behavior alleged by Plaintiff does not violate the Due Process Clause of the Constitution, the Individual Defendants are entitled to qualified immunity from those claims, and the claims are **DISSMISED WITH PREJUDICE**.

### 2.  Equal Protection

Plaintiff cites the Equal Protection Clause of the Fourteenth Amendment as one ground for relief, but again fails to relate any facts to her legal claim.   Under the Equal Protection Clause, no State shall "deny to any person within its jurisdiction the equal protection of the laws."   U.S. CONST. amend. XIV § 1.   This requires that all persons similarly situated shall be similarly treated.   *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).   In order to bring a claim pursuant to § 1983 for an Equal Protection violation, a plaintiff must show the existence of purposeful discrimination.   *See Batson v. Kentucky*, 476 U.S. 79, 93, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

Here, Plaintiff alleges that Defendants were involved in "the 'papering' of Plaintiff's file with infractions that her white, male counterparts did not receive."   Pl.'s Resp. at 13.   However,

the evidence does not support Plaintiff's conclusion.  Specifically, when Plaintiff was disciplined for the bookbag incident, the other student involved, a white male, was disciplined equally. Likewise, Keller warned other students who were male and white that their poor attendance was jeopardizing their position in the Fire Academy.  Keller also expelled three white males in the same year as Plaintiff's resignation for problems similar to those experienced by Plaintiff. Plaintiff does not dispute Defendants' evidence.  Plaintiff mentions one instance where her classmates left her behind in a smoky building and were not disciplined.  Though Plaintiff may have felt they deserved discipline for that infraction, she has failed to show how those students were similarly situated given Plaintiff's extensive record of tardiness, poor academics, and unacceptable conduct.  Pander's alleged comment that "[t]he only reason we keep you around is that you are black and a woman and we have a quota to meet" is the only other arguable support for an Equal Protection claim.  While this offensive comment might be indicative of Pander's subjective bias, it is not supported by any objective evidence of unconstitutional treatment. Accordingly, Plaintiff has failed to show facts which would constitute an Equal Protection violation, and her Equal Protection claims are **DISMISSED WITH PREJUDICE**.

### C.  Title IX Claim

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a). There is a private remedy for Title IX violations, which extends to allegations of sexual harassment.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S. Ct. 1989, 1999, 141 L. Ed. 2d 277 (1998); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688, 99 S. Ct. 1946, 1953, 60 L. Ed. 2d 560 (1979).

Although the Fifth Circuit has not directly addressed the issue of individual liability under Title IX, the majority of courts that have considered the issue have ruled that Title IX does not permit suits against individuals. *See Boulahanis v. Bd. of Regents*, 198 F.3d 633, 640 (7th Cir. 1999); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir. 1999); *Smith v. Metro. Sch. Dist. Perry Township*, 128 F.3d 1014, 1019 (7th Cir. 1997); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 901 (1st Cir. 1988); *see also Goins v. Hitchcock Ind. Sch. Dist.*, 191 F. Supp. 2d 860, 869 (S.D. Tex. 2002); *Brooks v. Tulane Univ.*, 1996 WL 709424 *2 (E.D. La. 1996); *Bowers v. Baylor Univ.*, 862 F. Supp. 142, 145-46 (W.D. Tex. 1994); *Garza v. Galena Park Indep. Sch. Dist.*, 914 F. Supp. 1437, 1438 (S.D. Tex. 1994); *Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1577 (N.D. Cal. 1993).  The Court agrees with the determination made in these cases and finds that Plaintiff cannot assert a Title IX claim against the Individual Defendants in their individual capacities.  Accordingly, those claims are **DISMISSED WITH PREJUDICE**.

### D.  Retaliation Claim

Plaintiff's Complaint alleges that she was "retaliated against for complaining about the treatment she received from the administration, instructors, and fellow cadets."  Pl.'s First Am. Compl. at 12.  Plaintiff's First Amended Complaint and her briefing in conjunction with this Motion are wholly unclear regarding her legal basis for a retaliation claim.  Plaintiff has not cited a statutory basis for her retaliation claim, so the Court must assume that she is pursuing her claim based on a specific constitutional right.  *See McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).  However, even though the Court has given Plaintiff a great deal of leeway in this analysis, it is not the Court's job to rewrite Plaintiff's Complaint.  Since Plaintiff has not articulated a statutory or constitutional basis for her retaliation claim, that claim is **DISMISSED**

**WITHOUT PREJUDICE**.  If Plaintiff would like to clarify her claim in this regard, she may move to amend her Complaint.

### E.  Negligent Supervision Claim

Plaintiff asserts a negligent supervision claim against COM only.  Under the doctrine of sovereign immunity, the State is not liable for the negligence of its employees.  While Texas has waived its immunity under certain circumstances as described by the Texas Tort Claims Act, a junior college district such as COM can only be held liable for personal injury, death, and property damage when (1) an employee is acting within the scope of his employment, and (2) the injury or damage arises from the operation of a motor vehicle.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.201, 101.051.  Because Plaintiff's claims do not arise from the operation of a motor vehicle, she cannot assert a claim for negligent supervision against COM.  Accordingly, Plaintiff's claim for negligent supervision is **DISMISSED WITH PREJUDICE**.

## IV.  Conclusion

For the reasons outlined above, Plaintiff's Thirteenth Amendment and negligent supervision claims against all Parties are **DISMISSED WITH PREJUDICE**.  Plaintiff's Title IX claims against the Individual Defendants are **DISMISSED WITH PREJUDICE**.  Plaintiff's Fourteenth Amendment claims against the Individual Defendants are **DISMISSED WITH PREJUDICE**.  Plaintiff's retaliation claims against all Parties are **DISMISSED WITHOUT PREJUDICE**.  Because they are duplicitous, Plaintiff's claims against the Individual Defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE.**  Remaining before the Court is Plaintiff's Title IX case against COM.

**IT IS SO ORDERED.**

**DONE** this the 25th day of July, 2007, at Galveston, Texas.

Samuel B. Kent
United States District Judge